IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KERRY R. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-428 |
| | ) Judge Nora Barry Fischer |
| CENTER FOR ORGAN RECOVERY AND | ) |
| EDUCATION, doing business as CORE, | ) |
| DORI BACHAR, LYNN NEFF, DIANE | ) |
| BICKFORD, and BRENDA MCKOWN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

This is a wrongful termination and employment discrimination suit pursuant to the Family Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). (Docket No. 15, at ¶ 1). Plaintiff Kerry R. Smith complains that Defendants Center for Organ Recovery ("CORE"), Dori Bachar, Lynn Neff, Diane Bickford, and Brenda McKown unlawfully discriminated against her because she was pregnant and/or suffering from disabling conditions resulting from an abnormal pregnancy.[1] *Id.* at ¶ 43. Defendants have filed a partial motion to dismiss, which is pending before this Court. (Docket No. 22). Specifically, they seek to dismiss Defendant Bickford from Count I because she was not a supervisor within the meaning of the FMLA. *Id.* at 3. They further argue that Counts IV and V should be dismissed because Plaintiff failed to exhaust her administrative remedies. *Id.* Plaintiff opposes dismissal on each basis. (Docket No. 27). After consideration of the parties' submissions and the well-pled allegations in

---

[1] While pregnancy is not considered a disability under the ADA or PHRA, *see Gudenkauf v. Stauffer Commcns., Inc.*, 922 F. Supp. 465, 473-74 (D. Kan. 1996) (collecting cases); *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 341-44 (E.D. Pa. 1994) (pregnancy is not a handicap or disability within the meaning of the PHRA), disabling physiological disorders related to an abnormal pregnancy might be protected under the ADA. *See Gabriel v. City of Chicago*, 9 F. Supp. 2d 974, 980-81 (N.D. Ill. 1998) (collecting cases).

Plaintiffs' Amended Complaint, (Docket No. 15), which are taken as true and viewed in the light most favorable to Plaintiffs, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court denies Defendants' Motion [22] for the following reasons.

**I.      Plaintiff has adequately pled a FMLA claim against Defendant Bickford**

The FMLA and the Department of Labor's implementing regulations make individual liability available for violations of the FMLA by "corporate officers 'acting in the interest of an employer.'" *Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 667 F.3d 408, 414 (3d Cir. 2012) (quoting 29 C.F.R. § 825.104(d)). The Court of Appeals for the Third Circuit has elaborated that "an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Id.* at 417 (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)).

In determining whether a defendant is a supervisor such that liability can attach for FMLA purposes, courts analyze the "economic reality" of the plaintiff's relationship with the defendant in light of the totality of the circumstances and "examin[e] whether the individual supervisor carried out the functions of an employer with respect to the employee." *Id.* (collecting cases). To that end, the Third Circuit recognizes that "relevant factors in ascertaining the economic reality of the employment situation include whether the individual '(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 418 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). These factors, however, are not dispositive, and the Court must consider any other relevant evidence of a supervisory relationship. *Id.* (citing *Herman*).

Plaintiff's Complaint alleges that Defendant Bickford forced her to take FMLA leave in lieu of granting her a reasonable disability accommodation necessitated by her pregnancy, thereby constituting an unlawful FMLA interference. (Docket No. 15, at ¶ 52). While Defendants acknowledge that interference with FMLA leave can be a basis for liability as to supervisors, they argue that she has not properly pled facts that indicate Defendant Bickford was her supervisor. (Docket No. 23, at 4).

In this Court's estimation, the allegations in the Amended Complaint raise the plausible inference that Defendant Bickford "carried out the functions of an employer with respect to [Plaintiff]." *Haybarger*, 667 F.3d at 417. The pleadings identify Defendant Bickford as "the Director of Quality Improvement at CORE." (Docket No. 15, at ¶ 16). Through her position at CORE, she was involved in the refusal to accommodate Plaintiff's medically necessary shift restriction, her termination, and the rescinding of that termination. In particular, she participated in the August 15, 2011 meeting wherein both she and Defendant Neff allegedly refused to accommodate her twelve-hour shift restriction and directed her to have her doctor remove said medical restrictions. *Id.* at ¶ 29. After Plaintiff was initially terminated on that very day, Defendant Bickford directly contacted her to inform her that her termination had been rescinded. *Id.* at ¶ 34. However, Defendant Bickford also told Plaintiff her request for the twelve-hour shift restriction would not be accommodated, that she would have to file for FMLA leave immediately, and that she was not permitted to return to work. *Id.* After Plaintiff had an emergency cesarean section, Defendant Bickford repeatedly threatened to terminate her employment if she did not return to work by December 1, 2011. *Id.* at ¶ 40. Even though Plaintiff asked her for an additional six months of recovery time, *id* at ¶ 42, Defendant Bickford's threats were realized and Plaintiff was terminated. *Id.* at ¶ 47.

Contrary to Defendants' assertion, (Docket No. 23, at 4), Plaintiff's pleadings therefore implicate at least two of the four non-exhaustive factors indicating a supervisory relationship—the power to hire and fire as well as the power to control an employee's work schedule. *Id.* Although the exact scope of Defendant Bickford's participation in the decisionmaking process is not clear, the allegation that she was part of a cadre of supervisors who could instruct her to have her medical restrictions lifted and could terminate her employment at CORE is sufficient to plausibly indicate a supervisor-employee relationship. More significantly, the Amended Complaint discloses that Defendant Bickford was the one who informed Plaintiff that her initial termination on August 15, 2011 by Defendants Bachar, Neff, and McKown was rescinded. (Docket No. 15, at ¶¶ 31, 34). Such an allegation suggests that Defendant Bickford might have had the authority to countermand the termination decision by her three individual co-defendants, which would certainly constitute a power of a high-level supervisor.

Whether Defendant Bickford *actually* wielded supervisory authority over Plaintiff remains a question of fact that would be better addressed at a later proceeding. The "economic reality" test is fact-intensive, and discovery is necessary to ascertain the veracity of the pleadings as well as the nature of Defendant Bickford's relationship with Plaintiff. The Court finds that, accepting all of Plaintiff's pleadings as true and construing all inferences in her favor, as this Court must, Plaintiff has pled sufficient facts to create a plausible inference that Defendant Bickford was her supervisor. *See Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss the FMLA claim against Defendant Bickford is denied.

**II.    Plaintiff has exhausted her administrative remedies**

Defendants next argue that Plaintiff has failed to exhaust two of her claims. Specifically, they claim that her EEOC charge did not mention any kind of retaliation or aiding and abetting

claim. (Docket No. 23, at 5-7). They therefore seek dismissal of Counts IV and V, which respectively advance claims for retaliation under the ADA as well as aiding and abetting under the PHRA. *Id.*

It is well-established that "[a] plaintiff 'must exhaust all administrative remedies before bringing a claim for judicial relief.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)). Only after the EEOC investigates a properly-filed charge and issues a right-to-sue letter can the plaintiff initiate a private action. *See Burgh v. Borough Council*, 251 F.3d 465, 470-71 (3d Cir. 2001) (explaining the EEOC investigation and administrative resolution process). Even then, the Third Circuit Court of Appeals has explained that "[a] plaintiff's claim must … fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Mandel*, 706 F.3d at 163 (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)). Failure to exhaust administrative remedies provides a basis for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Anjelino v. New York Times Co.*, 200 F.3d 73, 87-88 (3d Cir. 1999).

### A. Plaintiff has exhausted her retaliation claim under the ADA

Plaintiff claims that Defendants' failure to grant her request for additional time off from work to recover from her traumatic pregnancy and her eventual termination was motivated by retaliatory animus that dated back to her previous request for a reasonable twelve-hour shift accommodation. (Docket No. 15, at ¶¶ 64-65). In support of this claim, she alleges that she told Defendants about her pregnancy in late June 2011 and requested the reasonable accommodation on August 15, 2011.[2] *Id.* at ¶¶ 19, 24, 29. In response, Defendants immediately terminated her employment. *Id.* at ¶ 31. Although her termination was rescinded, she was forced to immediately

---

[2] An individual who makes a good faith requests for accommodation has engaged in protected activity for the purposes of retaliation claims under the ADA. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190-91 (3d Cir. 2003).

5

take FMLA leave. *Id.* at ¶¶ 29-31, 34-35. This incident became the subject of an EEOC Complaint filed on September 30, 2011, which contained all of these aforementioned factual allegations. (Docket No. 22-2, at ¶¶ 5-8, 14-16, 19-25).

Shortly after Plaintiff gave birth on October 30, 2011 by emergency cesarean section, Defendants directed her to return to work by December 1, 2011 or risk termination. (Docket No. 15, at ¶¶ 38, 40-41). Defendants made this request even though they were aware of her precarious medical condition and the fact that her baby had died hours after birth due to prematurity. *Id.* at ¶¶ 38-39. Plaintiff avers that her FMLA leave then expired, *id.* at ¶ 43, her request for an additional six weeks of unpaid leave was denied, *id.* at ¶ 42, and she was terminated because she was unable to return to work by the December 1 deadline. *Id.* at ¶¶ 41, 47. Following this second termination, she filed a Supplemental Complaint with the EEOC on June 5, 2012, which also incorporated these additional allegations. (Docket No. 22-3, at ¶¶ 6-13).

In light of these facts alleged in Plaintiff's EEOC complaint, the Court finds that she has properly exhausted her retaliation claim under the ADA. Taking into consideration Plaintiff's termination *immediately* after her request for a reasonable accommodation on August 15, 2011, Defendants' subsequent demand that Plaintiff take *immediate* FMLA leave that same day, their refusal to grant her an additional six weeks of recovery time to recover from a serious surgical procedure despite the fact that they forced her to take FMLA leave early, as well as the entire timeline of events building up to the seemingly inevitable termination action, all of which were included as allegations in the EEOC complaint, her claim of retaliation falls within the scope of the EEOC complaint. *Mandel*, 706 F.3d at 163.

Although Plaintiff failed to check boxes indicating that she was alleging that she was advancing a retaliation claim in both the September 30, 2011 Complaint, (Docket No. 22-2, at 1),

6

and the June 5, 2012 Supplemental Complaint, (Docket No. 22-3, at 1), failure to check a box in the charge documents during administrative review is not, by itself, dispositive of the exhaustion issue. *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (noting that a claim is not precluded merely because plaintiff failed to check a box on an EEOC charge form); *Teeter v. State Corr. Institute-Pittsburgh*, 2013 WL 3367546, at *4 (W.D. Pa. July 5, 2013) (Lenihan, C.M.J.) (same) (citing *Zahavi v. PNC Fin. Servs. Grp., Inc.*, Civ. No. 07-376, 2007 WL 3053090, at *7 (W.D. Pa. Oct. 18, 2007)). Because Plaintiff had alleged sufficient facts to indicate retaliatory conduct in her EEOC complaint, the failure to specifically use the terms "retaliate" or otherwise come to a legal conclusion about retaliation is not fatal. *Cf. Mandel*, 706 F.3d at 164 (plaintiff who failed to allege any retaliatory conduct or check a box indicating a retaliation claim on the EEOC charge form had not exhausted the retaliation claim); *Barzanty*, 361 F. App'x at 414 (hostile work environment claim was not exhausted because plaintiff failed to provide facts that suggested a hostile work environment and did not check an appropriate box on the EEOC charge form). Therefore, Defendants' motion to dismiss Count IV for failure to exhaust is denied.

**B.  Plaintiff has exhausted her aiding and abetting claim under the PHRA**

The individual Defendants further argue that Plaintiff failed to exhaust her claim against them for aiding and abetting CORE's alleged unlawful discrimination because she "did not allege any such claim in the underlying proceedings." (Docket No. 23, at 7). The PHRA provides that supervisory employees may be individually liable if they "aid, abet, incite, compel or coerce the doing of any act" prohibited by the statute. 43 Pa. Const. Stat. § 955(e). Such liability may attach to supervisors who fail to take prompt remedial action against discrimination. *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996).

Plaintiff has set forth numerous allegations in the Amended Complaint that implicate Defendants Bachar, Neff, Bickford, and McKown in facilitating CORE's discriminatory and wrongful conduct. (Docket No. 15, at ¶¶ 24-25, 29, 31-36, 39-42). These same allegations of fact are substantially present in the EEOC complaint. (Docket No. 22-2, at ¶¶ 5-8, 14-15, 19, 21-22, 24-25; Docket No. 22-3, at ¶¶ 8-12). Therefore, her aiding and abetting claim under the PHRA falls fairly within the scope of the prior EEOC complaint, even though there was no formal reference to an aiding and abetting claim. *Mandel*, 706 F.3d at 163. Plaintiff has therefore exhausted her administrative remedies as to this claim. To the extent that Defendants also seek to dismiss this claim on the basis that Plaintiff has insufficiently pled supporting facts, the Court finds that the allegations contained in the Amended Complaint do indeed establish the plausible inference that the individual Defendants aided and abetted CORE's unlawful discriminatory practices. *See Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss Count V for failure to exhaust is denied.

## ORDER

Based on the foregoing,

IT IS HEREBY ORDERED that Defendants' "Motion to Dismiss, in Part, Plaintiff's Amended Complaint, Pursuant to F.R.C.P. 12(b)(6)" [22] is DENIED.

> *s/ Nora Barry Fischer*
> Nora Barry Fischer
> United States District Judge

Date:   August 9, 2013

cc/ecf:  All counsel of record